## STATE OF INDIANA, EX REL. ALEXANDER, *v.* COOVER, STATE VETERINARIAN.

[No. 21,815.   Filed May 6, 1913.]

1. ANIMALS.—*Contagious Diseases.—Destruction of Diseased Animals.—Appraisal.*—Under the act of March 8, 1909 (Acts 1909 p. 443) authorizing appraisal of diseased animals ordered to be killed, and providing that the owner of a tubercular animal shall have a reasonable time within which to prepare it for market, subject to inspection, and may retain it for breeding purposes under conditions approved by the State Veterinarian, or may keep it for dairy purposes if the milk is pasteurized, the owner of a diseased animal which has merely been condemned by the veterinarian is not entitled to an appraisement thereof, since, until the animal is ordered killed, the owner is not deprived of the right to prepare it for market within a reasonable time, nor of his right to retain it for the purposes and under the conditions prescribed in the statute.   p. 481.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Mandamus by the State of Indiana, on the relation of James Alexander, against William E. Coover, State Veterinarian of Indiana, to compel the appointment of an ap-

praiser to assist in the appraisement of a diseased animal of the relator. From a judgment denying the relief, the relator appeals. *Affirmed.*

*Franklin Chappell* and *James K. Marsh,* for appellant.

*Thomas M. Honan,* Attorney-General, *Edward M. White, James E. McCullough* and *Thomas H. Branaman,* for appellee.

Erwin, J.—This was an action by appellant, on a petition asking that a writ of mandate issue, ordering and commanding the said William E. Coover, State Veterinarian of Indiana, to appoint an appraiser, who with another, appointed by relator, may appoint another appraiser, who is a freeholder of said county; that the three appraisers may then under oath or affirmation appraise a certain cow, which it is alleged had been condemned by the appellee, State Veterinarian, under the law of the State of Indiana, enacted by the General Assembly for the year 1909 (Acts 1909 p. 443).

The relator avers that he was, on April 8 and 9, 1910, and at all times mentioned in his complaint the owner and in possession of a jersey cow; that on April 8 and 9, 1910, one B. F. Mauck, a duly qualified veterinarian designated by respondent to make tuberculin tests of cattle in Clark County, Indiana, subjected the said cow to the tuberculin test; that the said cow was found by said Mauck to be infected with tuberculosis, and on completion of said tests, a so-called tuberculin test certificate, was then and there given to this relator. The certificate of said Mauck is as follows:

"This certifies that on April 8-9, 1910, I tested the following described cow for James Alexander, breed Jersey, sex, Female, name of the tuberculin used, U. S. A. amount used 2 C. C. and gave the following temperature reaction:

| Date | A.M. | | Injected |
|------|------|--|----------|
| Before 4-8 P.M. | 101–2/5–101–3/5–101–3/5 | —6 P.M. | |
| After 4-9 A.M. | 104–2/5–105–3/5–104 | 104–1/2 | |

The above cow is not free from tuberculosis."

The order of the State Veterinarian, omitting the caption is as follows:

"You are hereby notified that the animal or animals hereinafter described are affected with or have been exposed to a contagious or infectious disease known as tuberculosis and that the said animal or animals shall not be disposed of or removed from the premises or other animals allowed upon the same premises except as ordered by the state Veterinarian or deputy as provided by an act of the legislature, approved by the governor of the state of Indiana Mar. 6th, 1901.

Description of animal.

| Name | Kind | Age | Sex-distinguishing Marks |
|------|------|-----|--------------------------|
| Rosie | Jersey | 9 | Female, light fawn. |

Order:—To be kept isolated from all other cattle and swine in quarters now located until destroyed under Federal supervision, not to be used except as provided by law."

That said test revealed the fact that said cow was affected and had been exposed to a contagious or infectious disease known as tuberculosis; and that the said animal or animals shall not be removed from the premises, or other animals allowed upon the premises, except as ordered by the State Veterinarian or deputy as provided by the State legislature. Relator avers that the respondent has deemed it necessary to protect the health of the public by the slaughter of the said cow infected with tuberculosis. Relator avers further that he made demand on the respondent, that proceedings be taken to compensate him for the said cow and he endeavored to agree with the respondent on the value of said cow, and that no agreement can be made between them as to the value of said cow. He avers that he has demanded of the respondent that he appoint an appraiser, who is a freeholder of Clark County, who with another appraiser, who is a freeholder in said county, the latter appointed by the relator, may select another appraiser who is a freeholder in said county; that all of said appraisers under oath or affirmation may then set a value on the said cow taking into con-

sideration its actual value at the time of the appraisement, and that the respondent refused and still refuses his said demand. He avers further that the said cow has been quarantined by the said State Veterinarian and respondent herein; that the cow shows physical evidence of tuberculosis, and has been condemned by the respondent. Relator then sets out certain averments which show that the cow in question did not come within any of the exceptions provided in said statute for which payment shall not be made. Relator further avers, that he has been denied the cow for breeding purposes, and that he has been denied the privilege of keeping the said cow for dairy purposes, that he is a resident and citizen of the said county of Clark; that he has no other adequate remedy than this mandate applied for herein.

Upon the filing of this petition the court issued a writ of mandate ordering and commanding that the respondent appoint an appraiser who is a freeholder of said county, who with another appraiser, who is a freeholder of Clark County, the latter appointed by the relator, may together appoint a third appraiser, who is a freeholder of said county, and that the three appraisers may then, under oath or affirmation appraise the said cow taking into consideration its actual value at the time of the appraisement; and he do as in the writ directed, or show cause why the same should not be done. To this complaint and alternative writ of mandate the appellee filed a demurrer, which demurrer was for want of facts to constitute a cause of action, and which said demurrer was by the court sustained, and relator refusing to plead further, judgment was rendered against the said relator, that he take nothing by his petition and that the respondent have and recover of and from the relator his costs.

The only question presented by the assignment of errors in this case, is, as to whether the circuit court erred

in sustaining the demurrer to the relator's petition and alternative writ of mandate. The statute under which this action is brought and under which relator claims his right to recover is §1, Acts 1909 p. 443, and reads as follows: "That when it shall be deemed necessary to kill any animal or animals or to destroy any property to prevent further spread of disease or to protect the health of the public by the slaughter of animals infected with tuberculosis, the state veterinarian or his agent may adjust the claim with the owner or his agent: *Provided,* The amount to be paid is less than twenty-five dollars; if the claim exceed twenty-five dollars or an agreement can not be made with the owner or claimant for the amount thereof, three appraisers, who shall be freeholders in the county, shall be appointed, one by the state veterinarian or his agent, one by the owner or claimant, and a third by the two appointed, as aforesaid, who shall under oath or affirmation appraise the animal, or animals, or property  *  *  *."

The right to maintain the action in question depends upon the construction to be given to said section. The order of the veterinarian made in this cause, after describing the animal and its location reads as follows, to wit: "To be kept isolated from all other cattle and swine in quarters now located until destroyed under Federal supervision, not to be used except as provided by law." Appellant insists that under the law that he has a right to demand that the value of his property may be fixed by appraisers as asked for in his petition. The order in this case does not authorize the destruction of any property, nor does it direct the *killing* of the cow in question; it only provides that it be quarantined and kept separate from all other cattle and swine. Section 1, of the act in question makes provision for the payment of animals *killed* only when the veterinarian shall order the same to be done. Section 8 of the act (Acts 1909 p. 443) makes this provision: "That the owner of an

animal reacting to the tuberculin test shall have a reasonable time in which to prepare it for market, the time to be determined by the state veterinarian, and that the reacting animal shall be slaughtered subject to post mortem inspection under the federal rules and regulations governing meat inspection. That the owner of a reacting animal or animals shall have the privilege of retaining them for breeding purposes under conditions approved by the state veterinarian. That the owner of dairy cattle may keep them for dairy purposes, provided that the milk is pasteurized in a manner to be approved by the state board of health, and provided that the cow or cows show no physical evidence of disease, nor in any other way show the discharge of tuberculous material. That any animal showing physical evidence of tuberculosis may be condemned. That the certification of the state veterinarian as to the physical condition of any animal shall be final and accepted by the health officer in the state.''

There is no allegation in appellant's petition in this case that the said animal had been ordered killed by the State Veterinarian. The order made by the State Veterinarian and set out in relator's petition, after describing the animal, says, ''That she is to be kept isolated from all other cattle and swine in quarters now located until destroyed under Federal supervision, not to be used, except as provided by law.'' This order of the veterinarian set out in plaintiff's petition counteracts the averment that she was ordered killed and conclusively shows that she was not ordered killed, but to be simply quarantined. There is nothing in this order that prevents the relator, under §8, *supra,* of said act, having a reasonable time in which to prepare the cow for market, or to prevent the owner of such animal from retaining her for breeding purposes under conditions approved by the State Veterinarian; or that he might retain said cow for dairy purposes, provided the milk was pasteurized in a manner approved by the State Board of

Health.    The finding and order of the State Veterinarian do not authorize the relator to have the cow appraised and a value fixed, and paid out of the State treasury.

Section 8 of said act provides that animals showing physical evidence of tuberculosis may be condemned.    There is nothing in the order or finding of the State Veterinarian that declares that said animal shows any physical evidence of tuberculosis, and the only thing the said veterinarian could do was to order her quarantined.    Under the law as it must be construed and under the terms of which the duties of the veterinarian are very clearly defined, the relator would have no right to insist upon the appraisement of said animal until she was ordered killed by the veterinarian.

The court did not err in sustaining the demurrer to the relator's petition and the alternative writ of mandate. Judgment affirmed.

NOTE.—Reported in 101 N. E. 713. See, also, 2 Cyc. 339. As to regulations the State may enforce for quarantining animals, see 97 Am. St. 242. On the question of the validity and construction of statutory regulations as to infected animals, see 26 L. R. A. 638; 43 L. R. A. (N. S.) 1066. On the power to require destruction of diseased domestic animals without making compensation therefor, see 18 L. R. A. (N. S.) 369.